UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
RVC FLOOR DECOR, LTD.,

Plaintiff,

-against-

FLOOR AND DECOR OUTLETS OF AMERICA, INC.,

Defendant.
-----------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-04894 (DRH)(ARL)

**APPEARANCES:**

**For Plaintiff:**
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530
By: David M. Barshay, Esq.

**For Defendant:**
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Ne, Suite 2800
Atlanta, Georgia 30309
By: Richard Charles Henn, Jr., Esq.
Bryan J. Wolin, Esq.

Kilpatrick Townsend & Stockton LLP
1114 Avenue of the Americas
21st Floor
New York, NY 10036
By: Bryan J. Wolin, Esq

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff RVC Floor Decor, Ltd. ("Plaintiff") brought this action against Defendant Floor and Decor Outlets of America, Inc. ("Defendant") asserting claims for unfair competition pursuant to 15 U.S.C. §1125(a) and common law infringement, dilution, and misappropriation of Plaintiff's trademark in connection with Defendant's marketing efforts. Presently before the

Court is Defendant's motion to dismiss Plaintiff's complaint as duplicative of a similar case already proceeding before this Court, Case No. 18-cv-6449 ("Pending Action") and as an attempt to circumvent Magistrate Judge Lindsay's orders in the Pending Action. For the reasons explained below, the motion to dismiss is granted.

**BACKGROUND**

*I. Factual Background*

The following relevant facts come from the August 27, 2019 Complaint ("Compl.") and are assumed true for purposes of the instant motion to dismiss:

Plaintiff has sold carpet and vinyl and hard surface flooring on Long Island since 1974. (Compl. [ECF No. 1] ¶¶ 14, 16.) Under the trademark "Floor Decor," Plaintiff opened its first store at 430 Sunrise Highway in Rockville Centre, NY. [1] (*Id.* at ¶ 14.) Over time, Plaintiff's business became "one of the highest quality showrooms on Long Island," attracting customers predominantly from Kings, Queens, Nassau, and Suffolk counties, but also from Newark, New Jersey, and Westchester. (*Id.* ¶¶ 25, 33-34.) In 1984, Plaintiff opened a store at 456 Sunrise Highway and in 2014, Plaintiff opened a new showroom in Syosset, New York, where it also used the name trade name "Floor Decor & Design," in addition to "Floor Decor." (*Id.* ¶ 27, 63-64.) For forty-one years (1974 – 2015)[2], "all of its thousands upon thousands of customers referred to and knew the Plaintiff's business as Floor Decor," "all of the paperwork for the business…was in the name Floor Decor," and "the telephone was exclusively answered as Floor Decor." (*Id.* ¶¶ 46-48.) In all advertisements and promotional materials, "Floor Decor" was the

[1] As noted above, Plaintiff's full name is RVC Floor Decor, Ltd. The "RVC" in Plaintiff's name stands for Rockville Center, however Plaintiff has never used "RVC" for business purposes. Plaintiff states it included the "RVC" "before the name Floor Decor to ensure that there would be no issue with name availability." (Compl. ¶¶ 12, 13.)

[2] It is unclear if there was some change to Plaintiff's name after 2015.

"dominant, if not sole, feature," and Plaintiff never abandoned or ceased using that name. (*Id.* ¶¶ 55-56.)

Defendant, a Delaware corporation that sells similar products as Plaintiff but of an allegedly inferior quality, learned of Plaintiff's business and trademark in November 2012 "through a study commissioned by its intellectual property attorney." (*Id.* ¶¶ 81, 86, 89.) Six years later, on November 15, 2018, Defendant opened a store in Farmingdale, NY. (*Id.* ¶ 84.) Plaintiff alleges that Defendant began advertising the Farmingdale store 10 days before opening it. (*Id.* ¶ 85.)

Defendant's "presence and advertising in the market by use of a trade name that is nearly identical to Plaintiff's authentic mark," which it uses without Plaintiff's consent, has created confusion among Plaintiff's customers. (*Id.* ¶¶ 71, 98.) Since the summer of 2018, customers have called Plaintiff about Defendant's products, which appear similar to Plaintiff's products, but are of a "significantly lower quality." (*Id.* ¶¶ 66-67, 94.) Since November 2019, Plaintiff "has had a number of customers come to its showrooms who became quite angry since the stores do not carry low end Chinese imported product that Defendant advertises." (*Id.* ¶ 69.) Plaintiff alleges that Defendant's "inferior product offerings," "poor customer service and poor reputation negatively impact on [Plaintiff's] reputation and goodwill," causing Plaintiff irreparable harm. (*Id.* ¶¶ 67-68, 77.)

Furthermore, Plaintiff alleges that it "has been rendered completely invisible by Defendant's aggressive internet strategy" of using search optimization, which allows it to "dominate[] the entire first screen of Google results." (*Id.* ¶¶ 73-74.) In the thirty days after Defendant opened its Farmingdale store, Plaintiff's internet sessions fell by thirty-six percent. (*Id.* ¶ 80.) Plaintiff acknowledges that while search optimization might "not be unfairly

competitive, the reason why it is occurring is due to the name similarity between Floor Decor and Floor & Decor." (*Id.* ¶ 74.)

*II. Procedural Background*

On November 13, 2018, Plaintiff commenced the Pending Action against Defendant[3] asserting claims for unfair competition, infringement, and dilution of Plaintiff's trademark in connection with Defendant's marketing efforts. (Pending Action, DE 1.)

On January 23, 2019, following an initial conference at which the parties agreed to a case management schedule, Magistrate Judge Lindsay set March 29, 2019 as the deadline to amend the pleadings. (Pending Action, DE 43.) Plaintiff did not file an amended complaint at that time. On April 8, 2019, the Parties filed a proposed stipulation in the Pending Action granting Plaintiff ten days from the So Ordering of the stipulation for Plaintiff to file its First Amended Complaint. (Pending Action, DE 69.) On April 16, 2019, Magistrate Judge Lindsay so ordered the stipulation, however Plaintiff failed to file its First Amended Complaint within ten days of Magistrate Judge Lindsay's order. On July 26, 2019, Plaintiff sought leave to file the First Amended Complaint, claiming it was "unaware" of Magistrate Judge Lindsay's April 16, 2019 order. (Pending Action, DE 98.) After holding a conference with the parties on July 31, 2019, Magistrate Judge Lindsay denied Plaintiff's letter application for leave to amend the complaint with leave to renew and ordered that "[t]he renewed motion must be submitted as a formal motion and will be addressed by the undersigned." (Pending Action, DE 101.) Plaintiff did not file a renewed motion.

Rather, Plaintiff initiated the present action ("Present Action") in November 2019 with what seems to be a substantially similar complaint to the proposed First Amended Complaint in

[3] Originally, there were two defendants: Floor & Decor Holdings, Inc. and Floor and Decor Outlets of America, Inc. Plaintiff voluntarily dismissed the former defendant on January 14, 2019. (Pending Action, DE 39.)

the Pending Action. (Pending Action, DE 98-1). All claims in the Present Action were included in the Pending Action (trademark infringement, unfair competition, and dilution), except for the Present Action's fourth claim (misappropriation). (Compl. ¶¶ 99-135.) Plaintiff asserts, however, that the Present Action's claims arose from conduct occurring after Plaintiff filed the Pending Action, specifically since July 1, 2019. (Compl. ¶¶ 99-135.) Plaintiff seeks the same relief in the Present Action as in the Pending Action, viz. damages suffered and profits wrongfully derived by Defendant through its unlawful activities, punitive damages, statutory damages pursuant to 15 U.S.C. § 1117(a), pre-judgment and post-judgment interest, attorneys' fees, and "such other and further relief as this Court deems just and equitable." (*Id.* at 15-16). Plaintiff also asks for an injunction in the Pending Action, enjoining Defendant from infringing Plaintiff's trademarks, diluting Plaintiff's trademarks, and unfairly competing with Plaintiff. (Pending Action, Compl. at 6-7.)

As of the filing of this Decision, the Pending Action is ongoing, with a pending summary judgment motion. (Pending Action, DE 131.)

## DISCUSSION

### *I. The Parties' Arguments*

Defendant argues that the Present Action should be dismissed because it is duplicative of the Pending Action and is an attempt to circumvent Judge Lindsay's orders. In support of its first argument, Defendant points to the prior pending action doctrine, which prohibits parties from litigating claims more than once. (Def.'s Mem. in Supp. [ECF No. 16] at 4.) Defendant argues that the claims in the Present Action are part of the same series of transactions as those in the Pending Action, and that Plaintiff "cannot evade the rule against duplicative litigation by isolating a timeframe of activity it alleged first began a year ago and has been continuous since." (*Id.* at 1.) With respect to its second argument, Defendant argues that Plaintiff "should

be held to the consequences of its delay." (*Id.* at 7.) Defendant also claims substantial prejudice if the Present Action continues. (*Id.*) Further, Defendant emphasizes the need for efficient resolution of disputes, judicial economy, and fairness to the parties, and asserts that multiple actions on the same issue frustrates those purposes. (*Id.* at 4, 5.)

Plaintiff argues that the Present Action is not duplicative of the Pending Action because it is based on conduct that occurred after the filing of the Pending Action and includes a new cause of action. (Pl.'s Mem. in Opp. [ECF No. 17] at 1.) Plaintiff also argues that the denial of Plaintiff's request to amend in the Pending Action was not based on the merits and is therefore irrelevant to the viability of the Present Action. (*Id.* at 8, 11.) Further, Plaintiff concedes that it could have moved to amend in the Pending Action to include the claims asserted in the Present Action, but that "it was under no obligation to do so under established Second Circuit precedent." (*Id.* at 1-2, 6.)

*II. Rule 12(b)(6) Legal Standard*

Though Defendant does not specify what rule it moves to dismiss under, the Court presumes it intends its motion under Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

*III. The Motion to Dismiss is Granted*

*a. Rule Against Duplicative Litigation*

"As between federal district courts…the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "As part of its general power to administer its docket, a district court may stay or dismiss a suit

that is duplicative of another federal court suit. This is because a plaintiff has no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d. Cir. 2019) (internal citations and quotations omitted). The purpose of the rule against duplicative litigation is to "foster judicial economy and the 'comprehensive disposition of litigation.'" *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S. Ct. 219, 96 L. Ed. 200 (1952)). While the rule against duplicative litigation is related to claim preclusion or *res judicata*, it is a distinct doctrine.[4] *Curtis*, 226 F.3d at 138.

For the rule to be properly invoked, the actions must be "the same," meaning there must be "the same parties…the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the…essential basis of the relief sought must be the same." *Sacerdote*, 939 F.3d at 504 (quoting *U.S. v. The Haytian Republic,* 154 U.S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930 (1894)). The "crucial date is the date the complaint was filed;" claims which arose subsequent to the date the complaint was filed can be litigated later. *See Curtis*, 226 F.3d. at 139-40; *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997). Nonetheless, new claims must be "more than additional instances of what was previously asserted," that is, they must be enough to "create a new cause of action that did not exist when the prior [suit was] brought." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 112-13 (2d Cir. 2000).

District courts have "a great deal of latitude and discretion" in determining whether an action is duplicative. *Morency v. Vill. of Lynbrook*, 1 F. Supp. 3d 58, 62 (E.D.N.Y. 2014).

---

[4] "The vital difference between the rule against duplicative litigation and the doctrine of claim preclusion, however, is that the former can only be raised to bar one of two suits that are both still pending; the latter is generally raised, after a prior suit is resolved on the merits, to preclude a party (or its privy) from relitigating claims in a subsequent suit that were or could have been raised in the prior action." *Sacerdote*, 939 F.3d at 505.

While the fact that the two actions involved "the same parties, similar or overlapping facts, and similar legal issues" is not dispositive, *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996), generally, an action is duplicative "if the claims, parties, and available relief do not significantly differ between the two actions." *Morency*, 1 F. Supp. 3d at 62 (internal citations and quotations omitted). "To ascertain whether two actions spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Waldman*, 207 F.3d at 108 (internal citations and quotations omitted). "[A] court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Curtis*, 226 F.3d at 138.

*b. Failure to Amend*

Generally, denial of a supplemental complaint to include a new claim has no bearing on the question of whether a plaintiff may file the new claim as a separate lawsuit, unless the denial is based on the merits of the new claim. *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999); *Integrated Techs. Ltd. v. Biochem Immunosystems, (U.S.) Inc.*, 2 F. Supp. 2d 97, 103 (D. Mass. 1998). Accordingly, denial based on untimeliness is "irrelevant" to the preclusion analysis. *See N. Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000).

Nonetheless, courts do not look fondly on "gamesmanship" by the parties, including where parties deliberately seek to circumvent a court's scheduling order. *See Branded Apparel Group LLC v. Muthart*, 2018 WL 4308545, at **4-5 (S.D.N.Y. Sept. 10, 2018) (dismissing second action where plaintiff "deliberately sought to circumvent" the court's scheduling order by filing a second action); *see also Morency*, 1 F. Supp. 3d at 62 ("[D]uplicative complaints may

not be filed by a plaintiff for the purpose of circumventing the rules pertaining to the amendment of complaints."). Where "much of the…amended complaint allege[s] events that had occurred prior to [the pending action's] filing," and where "if [the plaintiff] had timely raised those allegations, they would have been heard in [the present action]" it is not an abuse of discretion to hold a plaintiff to the consequences of their delay. *Curtis*, 226 F.3d at 140.

*c. The Present Action is Duplicative of the Pending Action*

The complaint in the Present Action is essentially a more detailed version of the one filed in the Pending Action, with an additional claim for misappropriation. Plaintiff admits that "the claims alleged in this action involve essentially the same course of wrongful conduct as alleged in [the Prior Action], as well as involve the same parties with similar and overlapping facts concerning similar legal issues…" (Pl.'s Mem. in Opp. at 3.) Nonetheless, Plaintiff attempts to cast its new complaint as non-duplicative by arguing that it asserts claims "based upon Defendant's opening of its Farmingdale store and other conduct engaged in by Defendant *subsequent* to the filing of [the Pending Action]." (Pl.'s Mem. in Opp. at 1 (emphasis added).) Defendant, on the other hand, argues that "[t]here are only two substantive differences between the pleadings: (1) in the Present Complaint, [Plaintiff] couches its claims as arising from conduct 'since July 1, 2019'; and (2) the Present Complaint adds additional facts in an attempt to bolster [Plaintiff's] claim for damages." (Def.'s Mem. in Supp. at 3.) The Court agrees with Defendant's assessment.

Plaintiff mysteriously couches its new claims as arising from conduct since July 1, 2019. Yet there is nothing in the complaint to explain why this date is offered as a benchmark, besides the fact that it is a date after November 13, 2018, when the Pending Action was filed. Further, keeping in mind that the actual conduct Plaintiff complains of is Defendant's marketing efforts,

Plaintiff's contention that its new claims are based on conduct that arose after Defendant opened its Farmingdale store is bellied by its assertion that Defendant began its marketing of that store on November 5, 2018, prior to the filing of the Pending Action. (Compl. ¶¶ 99-135 (complaining of Defendant's use of "'Floor & Decor' in connection with the *marketing* of flooring and design products….") (emphasis added).) Indeed, as Defendant points out, Plaintiff raised much of this allegedly new conduct, such as Defendant's online marketing efforts, in the course of the Pending Action. (Def.'s Mem. in Rep. at 7.)

Both parties point to the continuing tort doctrine in support of their respective positions regarding whether Plaintiff has alleged new conduct in this action. Defendant contends that Plaintiff "cannot evade the rule against duplicative litigation by citing only to the most recent instances of a tort that it alleged first began a year ago and is continuing today." (Def.'s Mem. in Supp. at 5.) Plaintiff, on the other hand, invokes the continuing tort doctrine for the proposition that "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief." (Pl.'s Mem. in Opp. at 4.) The continuing tort doctrine "provides that, in certain tort cases involving continuous or repeated injuries, the statute of limitations accrues upon the date of the last injury and that the plaintiff may recover for the entire period of the [tort], provided that an act contributing to the claim occurs within the filing period." *Mix v. Delaware and Hudson Ry. Co.*, 345 F.3d 82, 88 (2d Cir. 2003); *see also Falso v. Town of Dansville Police Dept.*, 616 F. App'x 11, 12 (2d Cir. 2015) ("The continuing tort doctrine speaks to when a cause of action accrues…"). Indeed, many of the cases cited by both parties discuss the continuing torts doctrine in the context of determining what conduct falls within the applicable statute of limitations. *See, e.g., Kwan v. Schlein*, 441 F. Supp. 2d 491 (S.D.N.Y. 2006); *Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.*, 88 F. Supp. 2d 188 (S.D.N.Y. 2000).

Given the purpose of the continuing tort doctrine, the Court disagrees with Plaintiff's view that the continuing tort doctrine allows for a literal new cause of action every day of infringement where the tort is continuous over a period of time. Such a result would be absurd and fly in the face of many well-settled legal principles, such as judicial economy. Furthermore, the Second Circuit recently rejected the idea that, at least with respect to the Lanham Act, new violations give rise to new causes of action. In the context of determining whether two actions were based on the same claim against the same defendant for purposes of awarding legal fees pursuant to Fed. R. Civ. P. 41(d), the Second Circuit found that two actions based on trademark infringement were the same, despite plaintiff's claim that its second suit sought relief only for infringements occurring after the filing of the first action. *Horowitz v. 148 South Emerson Assoc., LLC*, 888 F.3d 13, 23-24 (2d Cir. 2019). In so deciding, the Second Circuit noted "The record makes clear that [defendant] has utilized the at-issue marks at the restaurant and elsewhere since opening without interruption and with [plaintiff's] knowledge . . . . In sum, that certain alleged acts occurred after the filing of the [first action] does not alter the underlying claim upon which both actions are based." *Id.* This view is consistent with the cases cited in the parties' briefs. *See, e.g., R.G. Barry Corp. v. Mushroom Makers, Inc.*, 108 Misc. 2d 113, 436 N.Y.S. 2d 927 (N.Y. Sup. Ct. 1981), *aff'd* 85 A.D.2d 554, 444 N.Y.S. 2d 922 (1st Dep't 1981) (denying summary judgment on *res judicata* grounds because new complaint alleged "substantially different" facts from those alleged in first action).

At bottom, the claims in both actions are based on the same conduct—Defendant's marketing efforts using a name almost identical to Plaintiff's. Some of the same evidence is needed to support each claim, and some of the facts essential to the Present Action were presented in the Pending Action, (*see* Present Action, Compl. ¶¶ 65-72; Pending Action, Compl.

¶¶ 27-31), indicating that the same essential basis underlies relief in both actions. *Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991). Given Plaintiff's effort to amend the Pending Action with a complaint substantially similar to that of the Present Action, (Order [ECF No. 13] at 2), the two Actions "would have formed a convenient trial unit and addressing the two causes of action in one litigation would have conformed to the parties' expectations." *Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013) (internal citations and quotations omitted).

The fact that Plaintiff asserts slightly different legal theories and relief, in particular the claim for misappropriation which did not appear in the Pending Action, does not indicate that Plaintiff has distinct causes of action. *See Horowitz* 888 F.3d at 23-24; *Saud*, 929 F.2d at 919 ("it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies") (internal citation and quotations omitted). Similarly, the fact that some of the conduct alleged in this action occurred after the filing of the Pending Action does not support new causes of action. Therefore, all claims based on Defendant's alleged misuse of Plaintiff's trademark are essentially the same.

*d. The Court Cannot Condone Plaintiff's Conduct vis-à-vis Circumventing Judge Lindsay's Order*

Defendant argues that Plaintiff was required by Federal Rule of Civil Procedure 16(b) to show good cause to deviate from the scheduling order in the Pending Action, and that it has not provided any justification for why it did not comply with Judge Lindsay's orders. (Def.'s Mem. in Supp. at 5-6.) Plaintiff argues that it does not matter that it ignored Judge Lindsay's order to file a motion to amend and instead filed a new action, and that Defendant's argument that it establish "good cause" for its failure to include its new claims in the Prior Action has no basis in law. (Pl.'s Mem. in Opp. at 6.) Plaintiff leaves out many salient points in making this

problematic argument, including that it was given multiple opportunities to amend, failed to meet the deadlines to do so, and then violated a court order to do so. Plaintiff points to a number of cases in support of its position that denial of leave to amend does not bar a subsequent action, as long as leave to amend was not denied on the merits. Those cases, however, do not contemplate the situation actually at hand here—a plaintiff who was not denied the opportunity to amend, but rather one who was instructed to make a formal motion to amend and refused to do so.

Both parties rely heavily on a Second Circuit case, *Curtis v. Citibank*, *N.A.*, in support of their respective positions. 226 F.3d 133 (2d Cir. 2000). In *Curtis*, the plaintiffs initially filed an action against Citibank alleging employment discrimination based on their race. *Id.* at 136. After some issues with filing a second amended complaint not unlike those present here, such as missing the deadline to amend, the magistrate judge denied plaintiffs leave to amend the complaint. Plaintiffs ultimately appealed the denial to the district court, and while awaiting that decision, filed their second action. The district court dismissed the second action as duplicative and an attempt to circumvent the magistrate judge's orders. On appeal, the Second Circuit found that the "district court correctly held that plaintiffs may not file duplicative complaints in order to expand their legal right." *Id.* at 140. Thus, "claims arising out of the same events as those alleged" in the first action were dismissed. *Id.* Nonetheless, the Second Circuit reversed the district court as to those new claims of retaliation and constructive discharge that arose "out of events occurring subsequent to the filing of the first amended complaint." *Id*.

As applied here, and in line with the other case law discussed above, *Curtis* counsels in favor of dismissing Plaintiff's new action in its entirety. Plaintiff has not demonstrated that its allegedly new claims are in fact separate from the claims in the Pending Action. Furthermore, the Court has discretion to dismiss duplicative suits based on the "equities of the situation."

*Curtis*, 226 F.3d at 138. Considering the interests of fostering judicial economy, avoiding "the vexation of concurrent litigation over the same subject," and the prejudice to Defendant of having to essentially relitigate the same issues while the Pending Action is ongoing, I find that the best course of action is to dismiss the Present Action. *See id.* Accordingly, the Present Action is dismissed.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss is granted. The Clerk of Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
September 24, 2020

s/ Denis R. Hurley
Denis R. Hurley
United States District Judge